Filed 2/28/20 (unmodified opn. attached)

<u>CERTIFIED FOR PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| In re | F076546 |
|---|---|
| KEVIN HOWERTON, | (Kern Super. Ct. No. HC015497A) |
| On Habeas Corpus. | **ORDER MODIFYING OPINION AND DENYING REHEARING** [NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the published opinion filed herein on January 30, 2020, and reported in the Official Reports (44 Cal.App.5th 875) be modified as follows:

1.  On page 2 of the slip opinion, the last sentence of the third full paragraph, the words "and continues to serve" are deleted so the sentence reads:

> Consistent with the law at that time, Howerton then began serving his 10-year consecutive sentence for the weapons convictions.

2.  On page 3 of the slip opinion, the last two sentences of the first paragraph, beginning "Howerton, however, has not been released.…" are deleted and the following sentences inserted in their place:

> Howerton, however, was not released.  Rather, he remained incarcerated pursuant to the weapons convictions.

There is no change in the judgment.

Respondent's petition for rehearing is denied.

                                         _____

                                                 HILL, P.J.

WE CONCUR:


_____

LEVY, J.


_____

SMITH, J.

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| In re | F076546 |
|---|---|
| KEVIN HOWERTON, | (Kern Super. Ct. No. HC015497A) |
| On Habeas Corpus. | **OPINION** |

APPEAL from an order granting petition for writ of habeas corpus.  Michael E. Dellostritto, Judge.

Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Amanda J. Murray and Krista L. Pollard, Deputy Attorneys General, for Appellant.

Tracy Lum, under appointment by the Court of Appeal, for Respondent.

-ooOoo-

Respondent Kevin Howerton sought and was granted a writ of habeas corpus ordering his immediate release from prison and granting credits against his mandated parole term.  The grounds for relief turned on the trial court's interpretation of Penal Code section 3051.[1]  The People filed the present appeal, contending the trial court wrongly found section 3051 applicable because Howerton had already been granted parole on his indeterminate-term youth offense.  For the reasons set forth below, we

---

[1]     All future references are to the Penal Code.

reverse the trial court's order and remand with instructions to vacate the order granting the petition for writ of habeas corpus and enter a new order denying the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts relevant to this case are not in dispute. In 1991, Howerton was convicted of a second degree murder he committed in 1990, when he was 19 years old.[2] He was sentenced to an indeterminate term of 15 years to life. Pursuant to section 3000.1, Howerton is subject to a lifetime period of parole with the exception that he must be discharged from parole after five years absent a finding of good cause to retain him on parole. (§ 3000.1, subd. (b).)

In February 2000 and again in August 2002, while serving his second degree murder sentence, Howerton was convicted of possession of a weapon by an inmate. These convictions resulted in what was effectively an additional 10-year consecutive sentence.

In July 2014, Howerton was granted parole on the second degree murder sentence. Consistent with the law at that time, Howerton then began serving, and continues to serve, his 10-year consecutive sentence for the weapons convictions.

On January 1, 2016, amendments to section 3051 became effective that, if applicable, rendered Howerton eligible for a youth offender parole hearing on his second degree murder conviction. Subsequent case law, including but not limited to, *In re Trejo* (2017) 10 Cal.App.5th 972 (*Trejo*), held that youth offenders granted parole under

---

[2] Although not relevant to the issues here, we note the circumstances of Howerton's life and conviction detailed in the record. Howerton was a troubled child, using marijuana as early as age seven and alcohol by age 14. At age 15, he met a drug dealer named Jeff Ross, who provided him with his daily needs in exchange for sex. Howerton eventually devised a plan to kill Ross and did so by striking him more than twenty times with a hammer, such that "Mr. Ross's face and head were obliterated." Upon entering prison, Howerton joined one or more white supremacist gangs, attacked other inmates and prison staff, and obtained his weapons convictions. Ultimately, however, he ceased these activities and reformed his behavior to the satisfaction of the parole board.

section 3051 must be immediately released, even if they have later suffered adult convictions while incarcerated, provided any later convictions are not specifically identified as exempting those youth offenders from the statutory scheme. (See *In re Jenson* (2018) 24 Cal.App.5th 266 [summarizing and following *Trejo*]; *In re Williams* (2018) 24 Cal.App.5th 794, 799–805 [same].) Howerton, however, has not been released. Rather, he remains incarcerated pursuant to the weapons convictions.

Asserting that his situation is encompassed by the statutory scheme of section 3051, Howerton filed an application (petition) for a writ of habeas corpus with the Superior Court of the State of California for the County of Kern. In addition to release, Howerton argued any time served after he should have been released should count against his parole requirements. The People opposed, arguing Howerton was not a youth offender under the statute because he had been paroled under the normal course of the law prior to section 3051's amendments, and thus was serving a determinate term sentence committed as an adult and not an indeterminate sentence as required under the statutory scheme. The People further disagreed that any excess time in custody could count against a lifetime parole requirement.

The trial court ultimately granted the petition, concluding after substantial discussion that Howerton was entitled to release as of January 1, 2016, and ordering he "have deducted from his parole period the days of incarceration beyond that date." This appeal timely followed.

## DISCUSSION

This case turns upon an analysis of the statutory exceptions to the grant of a youth parole eligibility hearing.

### *Standard of Review and Applicable Law*

" 'As a general matter, we review the grant of a writ of habeas corpus by applying the substantial evidence test to pure questions of fact and de novo review to questions of law. [Citation.] "[W]hen the application of law to fact is predominantly legal, such as

3.

when it implicates constitutional rights and the exercise of judgment about the values underlying legal principles, [the appellate] court's review is de novo." ' " (*In re Campbell* (2017) 11 Cal.App.5th 742, 753.)

"Our fundamental task in construing a statute is to ascertain and give effect to the intent of the Legislature. [Citation.] ' " 'We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] ' "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." ' [Citation.] When the statutory language is clear and unambiguous, we presume the Legislature meant what it said." (*People v. Taggart* (2019) 31 Cal.App.5th 607, 612.)

Section 3051 was enacted in 2013. (*People v. Franklin* (2016) 63 Cal.4th 261, 276.) The legislative intent behind section 3051 " 'is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity ....' " (*Trejo, supra*, 10 Cal.App.5th at p. 980.) The statute thus provides for youth offender parole hearings that guarantee youth offenders a meaningful opportunity for release on parole. (§ 3051, subd. (e).) Youth offenders who committed their "controlling offense" prior to reaching a specified age are entitled to a parole hearing after serving a designated period in custody. (§ 3051, subd. (b).) More specifically, and as relevant to the issues raised here, "[a] person who was convicted of a controlling offense that was committed when the person was 25 years of age or younger and for which the sentence is a life term of less than 25 years to life shall be eligible for release on parole by the board during his or her 20th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions." (§ 3051, subd. (b)(2).) The "controlling offense" is defined as "the offense or enhancement for

4.

which any sentencing court imposed the longest term of imprisonment."  (§ 3051, subd. (a)(2)(B).)

As originally enacted, section 3051 applied where the controlling offense was committed before the offender was 18 years old.  (*Trejo*, *supra*, 10 Cal.App.5th at p. 981 & fn. 6.)  By an amendment that became effective on January 1, 2016, the Legislature extended the availability of youth offender parole hearings to offenders who were under 23 years old when they committed their controlling offenses.  (Stats. 2015, ch. 471, § 1 (Sen. Bill No. 261); see *Trejo*, *supra*, at p. 981 & fn. 6.)  By a subsequent amendment that became effective January 1, 2018, the Legislature further extended the availability of youth offender parole hearings to offenders who were under 25 years old when they committed their controlling offenses.  (§ 3051, subd. (b); Stats. 2017, ch. 675, § 1 (Assem. Bill No. 1308).)  At each amendment, new time limits were set for conducting the relevant hearings for those who became eligible for parole based on the amendments. (See § 3051, subd. (i)(2)(A) ["The board shall complete all youth offender parole hearings for individuals who were sentenced to indeterminate life terms and who become entitled to have their parole suitability considered at a youth offender parole hearing on the effective date of the act that added this paragraph by July 1, 2017."].)

### *Howerton Is Not Eligible for a Youth Offender Parole Hearing*

A youth offender parole hearing is a procedural mechanism to ensure that youth offenders are provided with a meaningful opportunity for release on parole.  As such, it is unsurprising that the statute has, within it, exemptions from the statutory scheme for those that have already been paroled or otherwise had a meaningful opportunity to obtain parole.  Relevant to this case, one who would otherwise be eligible for release on parole through a youth offender parole hearing is not entitled to the protections of the statutory scheme if "previously released or entitled to an earlier parole consideration hearing

5.

pursuant to other statutory provisions."**3** (§ 3051, subd. (b)(2).) If one has obtained a reasonable opportunity at parole prior to the point the statute's mandated timeframes are triggered, neither the right to a youth offender parole hearing nor any of the subsequent effects mandated by the case law or statutory scheme are required by the statute. Indeed, such hearings and their subsequent effects are specifically excluded by the statutory language.

In this case, the trial court's determination that Howerton's second degree murder conviction qualified him as a youth offender under the statutory scheme was only half of the required analysis. The second requirement was to determine whether Howerton had been "previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions" such that he was entitled to a youth offender parole hearing. Here, the record is clear. Howerton received multiple prior parole eligibility hearings and had previously been released on parole with respect to his "controlling offense" of second degree murder. Although these hearings and the parole determination came after the 20-year period noted in section 3051, they all occurred before Howerton became eligible for a youth offender parole hearing in the first instance. Given that the amended statutes provide a cutoff date to perform a first youth offender parole hearing if one becomes required by the amendments, and make no suggestion the parole analysis itself should be retroactive to the point at which eligibility would have first arisen, the statutory language concerning prior release or prior eligibility hearings most naturally reads to restrict eligibility to those that have not yet received the benefits of parole or reasonable parole eligibility hearings at the time the amended statute becomes effective.

---

**3**    Notably, the statutory scheme draws further distinctions based on the underlying sentence imposed. When 15 years to life or less, the statute does not care whether one has had a prior opportunity for parole, only whether one was previously released. For longer terms, the statutory scheme is more restrictive in its relief, considering whether or not a prior hearing has been held under other statutory provisions. (See § 3051, subd. (b)(1)–(b)(3).)

In reaching its conclusion that Howerton should be released, the trial court determined that Howerton's prior parole hearings and determinations were the equivalent of a youth offender parole hearing and thus entitled him to the protections of subsequent case law developments such as those in *Trejo* that required full immediate release. We do not agree. Determining that hearings and parole determinations made prior to one's amended eligibility under section 3051 can be retroactively classified as hearings under section 3051 negates the specific language providing that prior release or parole eligibility hearings exclude a youth offender from the youth offender parole hearing requirement. While eligibility for release may be retroactive under the statutory scheme, we see nothing in the language, case law, or legislative history that suggests previously completed parole actions should be reclassified as youth offender parole hearings. To the contrary, the plain language of the statute states the opposite and is consistent with the legislative concern that youth offenders are not being provided reasonable opportunities for parole in a timely fashion.

Howerton was not entitled to a youth offender parole hearing when he was convicted. Nor was he potentially entitled to a youth offender parole hearing when he was paroled.[4] Moreover, prior to any potential youth offender parole hearing eligibility, Howerton received multiple parole eligibility hearings, was ultimately deemed suitable for parole, and was actually paroled. By the plain language of the statute, Howerton was not entitled to a youth offender parole hearing at the time the statute became effective and thus was not entitled to the additional benefits afforded by the case law requiring immediate release upon parole under that statutory scheme.

---

[4]    In the first instance, Howerton was an adult under the eyes of the law when he committed the crime and the youth offender parole hearing statute had not yet been enacted. In the second, although the youth offender parole hearing statute had been enacted, it only covered individuals convicted of crimes before turning 18 and thus did not yet extend to Howerton's situation.

It is undisputed that under the law at the time of Howerton's parole, a grant of parole on a life sentence did not relieve one from serving any subsequently obtained consecutive sentences.  (§ 1170.1, subd. (c); see *In re Thompson* (1985) 172 Cal.App.3d 256, 259–262.)  Nor has that law changed with respect to adult offenders.  Thus, while an argument can be made that Howerton's release turns only on the timing of his parole grant and not upon any other distinguishing fact between him and other newly classified youth offenders, the statutory language shows this is the result of intentional line drawing on the part of the Legislature as reflected in the plain meaning of the language they chose for the statutory scheme.[5]

## DISPOSITION

The trial court's order is reversed.  The matter is remanded with instructions to vacate the order granting petition for writ of habeas corpus and enter a new order denying the petition.

_____

HILL, P.J.

WE CONCUR:

_____

LEVY, J.

_____

SMITH, J.

---

[5]     Howerton requested we take judicial notice of certain filings from recent court cases and other documents.  We previously deferred ruling on this request until reaching the merits.  Because our ruling means we either do not reach the arguments those documents relate to or do not need to consider the documents cited, we deny Howerton's request as moot.

8.